UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BERTHLYN BERNIER and WAVOL PRENTICE, <br><br> Plaintiffs, <br><br> v. <br><br> METROPOLITAN LIFE INSURANCE COMPANY, <br> Defendant. | * <br> * <br> * <br> * <br> * <br> * Civil Action No. 22-cv-11660-ADB <br> * <br> * <br> * <br> * <br> * |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs Berthlyn Bernier and Wavol Prentice ("Plaintiffs") filed this action against Defendant Metropolitan Life Insurance Company ("MetLife") seeking life insurance benefits following the death of Josie Bernier (the "Decedent"). [ECF No. 1-1 ("Compl.")]. Presently before the Court is MetLife's motion for summary judgment. [ECF No. 15]. For the reasons set forth below, MetLife's motion is GRANTED.

**I.    BACKGROUND**

    **A.    Factual Background**

Unless otherwise noted, the following facts are admitted as uncontroverted pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1,[1] and then stated in the light most

---

[1] Local Rule 56.1 provides that "[m]otions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation . . . [and] [f]ailure to include such a statement constitutes grounds for denial of the motion." L.R. 56.1. In turn, "[a] party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. . . . Material facts of record set

favorable to Plaintiffs, the non-movants. Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).

Prior to February 2016, the Decedent was employed by Massachusetts General Hospital ("MGH"). [ECF No. 17-1 ¶ 5]. Pursuant to her employment, the Decedent was eligible for life insurance benefits through a benefits plan ("Plan") sponsored by Partners HealthCare System, Inc. ("Partners") and insured by MetLife. See [ECF No. 16-2 at 72]. The Plan also identifies Partners as the Plan Administrator. [Id.]. The Plan made available both "basic" and "supplemental" life insurance coverage. [ECF No. 16-1 ("Vaccaro Decl.") ¶ 4]. The Decedent enrolled in "basic . . . ($50,000) and supplemental . . . ($250,000) life insurance coverages."

---

forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." Id.

Nevertheless, "'[d]istrict courts enjoy broad latitude' in adopting and administering such local rules." NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 6 (1st Cir. 2002) (quoting Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994)); see also Ramsdell v. Bowles, 64 F.3d 5, 7 (1st Cir. 1995) (noting district court's "great leeway in the application and enforcement of its local rules"). As such, "[w]here a party opposing a motion for summary judgment fails to comply with Local Rule 56.1, the court has the discretion to decide whether to impose the sanction of deeming the moving party's factual assertions to be admitted." Butters v. Wells Fargo Advisors, LLC, No. 10-cv-10072, 2012 WL 5959986, at *2 (D. Mass. Nov. 27, 2012) (citing Swallow v. Fetzer Vineyards, 46 F. App'x 636, 638–39 (1st Cir. 2002)) (further citation omitted); Plourde v. Sorin Grp. USA, Inc., 517 F. Supp. 3d 76, 81 (D. Mass. 2021) (quoting Butters, 2012 WL 5959986, at *2) (same).

Here, MetLife has included a statement of facts in its memorandum of law ("MOL") supporting its motion for summary judgment. See [ECF No. 16 at 2–5]. Although not explicitly indicated as such, it appears that MetLife views these as material, undisputed facts. See [id.]. Plaintiffs both filed affidavits, with some factual narration, see [ECF Nos. 17-1, 17-2], but did not file an opposing statement of disputed facts.

The Court will exercise its discretion and consider any factual disputes specifically raised by Plaintiffs and/or the summary judgment record. If undisputed, the facts stated in MetLife's MOL are deemed admitted pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1.

[ECF No. 16 at 4 (citing Vaccaro Decl. ¶ 11)]; see also [ECF No. 17-1 ¶ 2 ("[T]he full $300,000 insurance policy . . . includes the supplemental policy . . . .")].

Under the terms of the Plan, basic life insurance coverage was "noncontributory," meaning that employees did not pay any part of the premium, and supplemental life insurance was "contributory," meaning that employees were required to pay at least some part of the premium. See [ECF No. 16-2 at 31, 33]; [id. at 73 ("No contribution is required for Basic Life Insurance. You must make a contribution to the cost of Supplemental Life Insurance, Supplemental Accidental Death and Dismemberment Insurance, Dependent Life Insurance and Dependent Accidental Death and Dismemberment Insurance.")].

Under the terms of the Plan, an employee's basic and supplemental life insurance coverage typically ends on the date her employment ends. See [ECF No. 16 at 3 (citing Vaccaro Decl. ¶ 7; ECF No. 16-2 at 39)]. "[A] Plan participant whose coverage would otherwise end when she ceases to be actively at work has certain options under the Plan to continue her coverages if the Plan participant stopped working due to injury or sickness. . . . This includes the option of filing a claim to continue her supplemental contributory life insurance coverage without having to make any premium payment by demonstrating in a timely manner that she is totally disabled as defined by the Plan." [Id. (citing Vaccaro Decl. ¶¶ 8–9; ECF No. 16-2 at 60)]. Under the terms of the Plan, "[w]hen a claimant files a claim to continue Life Insurance on account of Total Disability, notice and Proof . . . must be received by [MetLife] within 12 months of the date the claimant became Totally Disabled, except in the case of legal incapacity of the claimant." [ECF No. 16-2 at 34, 66].

An employee may also pay the premium to continue such coverage. [ECF No. 16 at 4 (citing Vaccaro Decl. ¶ 10; ECF No. 16-2 at 46)].

As noted above, the Decedent left her employment with MGH in February 2016, which Plaintiffs state was necessary due to her disability. [ECF No. 17-1 ¶ 5]. Just over five years later, in March 2021, the Decedent passed away. [Id.]. "Pursuant to Partners' election that employees who cease working 'due to injury or sickness' may maintain their coverages under the Plan even though they are not actively working for Partners, the Decedent's basic non-contributory coverage continued because Partners paid the premium for such coverage from the time she ceased active work in February 2016 until her death in March 2021." [Vaccaro Decl. ¶ 12)]. Thus, in May 2021, MetLife paid Plaintiffs $50,000 pursuant to this basic life insurance coverage. See [id.]; [Compl. ¶ 9 ("[O]n or about May 3, 2021, MetLife issued by mail a twenty-five thousand dollar, and thirty-six cent ($25,000.36) check/funding process to each Ms. Berthlyn Bernier and Mr. Wavol Prentice. . . .")].

With respect to the supplemental life insurance, MetLife did not receive premium payments after the Decedent's employment with MGH ended in February 2016. [ECF No. 16-1 ¶ 13]. MetLife also asserts that it did not receive proof of the Decedent's disability prior to her death in March 2021, and therefore the coverage did not continue beyond the Decedent's employment, which ended in February 2016. [Id. ¶ 14]. As such, MetLife has not paid the $250,000 benefits from the Decedent's supplemental life insurance coverage. [Id.].

B.    **Procedural Background**

On August 26, 2022, Plaintiffs filed a complaint in Suffolk County Superior Court alleging breach of contract (Count I) and "bad faith, unfair and deceptive actions in violation of M.G.L. c. 93A and M.G.L. c. 176D" (Count II). [ECF No. 1-1 at 9–11]. MetLife removed the case to this Court on September 30, 2022, [ECF No. 1], and filed an answer on October 10, 2022, [ECF No. 8]. On November 21, 2022, the Court entered a scheduling order that included

4

deadlines for: MetLife to provide to Plaintiffs a proposed record for judicial review; the parties to file memoranda concerning any disagreements as to the contents of the record; the parties to file submissions showing cause for entitlement to discovery; and if the parties did not dispute the contents of record, for the parties to file motions for judgment on the record and/or motions to remand to the administrator, as well as any other dispositive motions.  See [ECF No. 12].  Other than a motion for a brief extension, prior to the instant motion, the parties have not filed anything since the Court's November 21, 2022 Scheduling Order.

On May 17, 2023, MetLife filed its motion for summary judgment.  [ECF No. 15].  Plaintiffs opposed the motion on May 29, 2023, [ECF No. 17], and MetLife filed a reply in further support of its motion on June 5, 2023, [ECF No. 18].  The motion is now ripe for the Court's review.

**II.     LEGAL STANDARD**

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).  Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).  By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States

5

v. Plat 20, Lot 17, 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

> To succeed in showing that there is no genuine dispute of material fact, the moving party must . . . "affirmatively produce evidence that negates an essential element of the non-moving party's claim," or, using "evidentiary materials already on file[,] . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial."

Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (third alteration in original) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party."  ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (citation omitted).  That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact."  Plat 20, Lot 17, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)) (further citation omitted).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Cochran, 328 F.3d at 6 (citation omitted).  That said, the Court need not credit "conclusory allegations, improbable inferences, and unsupported speculation."  Id. (quoting Medina–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## III.   DISCUSSION

MetLife argues that it is entitled to summary judgment because Plaintiffs' claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461.  [ECF No. 16 at 1].  ERISA "supersede[s] any and all State laws insofar as they

may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). A conflict preemption analysis under ERISA requires the court to address two questions: "(1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998) (quoting Rosario-Cordero v. Crowley Towing & Transp. Co., 46 F.3d 120, 124 (1st Cir. 1995)).

### A.  Whether the Plan is an "Employee Benefit Plan"

The first step of the ERISA conflict preemption analysis is to determine whether the Plan meets the criteria of an "employee benefit plan," as defined by ERISA.[2] ERISA defines "employee benefit plan" as an "employee welfare benefit plan," an "employee pension benefit plan," or a plan that is both. 29 U.S.C. § 1002(3). ERISA further defines "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness,

---

[2] As a threshold matter, given that the Plan appears to have been treated as a single unitary benefits package and Plaintiffs have not argued otherwise, the Court will evaluate the applicability of ERISA to the Plan generally, rather than isolating the supplemental life insurance coverage. See Gross v. Sun Life Assur. Co. of Canada, 734 F.3d 1, 16–17 (1st Cir. 2013) ("[W]e see no justification for isolating the long-term disability policy from Pinnacle's insurance package for purposes of our ERISA inquiry. A 'plan' under ERISA may embrace one or more policies . . . and it strikes us as both impractical and illogical to segment insurance benefits that are treated as a single group and managed together, potentially placing some under ERISA and some outside the statute's scope.") (citations omitted)); see also Sgro v. Danone Waters of N. Am., Inc., 532 F.3d 940, 943 (9th Cir. 2008) ("So long as [the employer] pays for *some* benefits, ERISA applies to the whole plan, even if employees pay entirely for other benefits."); Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 463 (10th Cir. 1997) (declining to treat separately optional insurance coverage that "was a feature of the Plan, notwithstanding the fact that the cost of such coverage had to be contributed by the employee").

accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)." Id. § 1002(1).

The First Circuit has held that "'the existence of a[n] [ERISA] plan turns on the nature and extent of an employer's benefit obligations,'. . . and, accordingly, the two common ways to show that a benefits decision falls outside ERISA both involve inquiry into the employer's relationship with the benefits under scrutiny." Gross, 734 F.3d at 6 (quoting Belanger v. Wyman–Gordon Co., 71 F.3d 451, 454 (1st Cir. 1995)).

First, the regulatory "safe harbor" provision excludes "group or group-type insurance programs" from ERISA's oversight if they satisfy four criteria:

> (1) the employer makes no contributions on behalf of its employees;
> (2) participation in the program is voluntary;
> (3) the employer's sole functions are to collect premiums and remit them to the insurer, and, without endorsing the program, to allow the insurer to publicize the program to its employees; and
> (4) the employer receives no consideration for its efforts, other than reasonable compensation for administrative services necessary to collect premiums.

Gross, 734 F.3d at 6 (citing 29 C.F.R. § 2510.3-1(j); and then citing Johnson v. Watts Regul. Co., 63 F.3d 1129, 1133 (1st Cir. 1995)). Here, Partners "ma[de] . . . contributions on behalf of its employees," [id.], by paying premiums for basic life insurance coverage, [Vaccaro Decl. ¶ 5]. Partners is also the Plan Administrator, [ECF No. 16-2 at 72], and by the terms of the Plan appears have functions beyond "collect[ing] premiums and remit[ting] them to the insurer, . . . without endorsing the program, to allow the insurer to publicize the program to its employees," Gross, 734 F.3d at 6; see [ECF No. 16-2 at 74 ("In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan

8

benefits in accordance with the terms of the Plan.")]. The Plan therefore fails to satisfy one or more of the four "safe harbor" criteria and is not excluded from ERISA's reach on this basis.

Exemption also may result from application of "the conventional tests" for determining whether ERISA governs. An ERISA welfare benefit plan has "five essential constituents":

> (1) a plan, fund or program (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

Gross, 734 F.3d at 6 (quoting Watts Regul., 63 F.3d at 1133; and then quoting Wickman v. Nw. Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1370 (11th Cir. 1982) (en banc))).

> "[T]he crucial factor in determining if a 'plan' has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis." . . . The inquiry is performed from the perspective of a reasonable person: "[A] 'plan, fund or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."

Gross, 734 F.3d at 6–7 (second alteration in original) (quoting Wickman, 908 F.2d at 1082, 1083 (quoting Donovan, 688 F.2d at 1370, 1373)).

MetLife asserts that a reasonable person could ascertain:

> (a) death benefits are the intended benefits; (b) [the Decedent] and her named beneficiaries (and other Partners' employee participants and their beneficiaries) were the recipients of such benefits; (c) by virtue of paying the premiums for certain coverages, Partners was the source of the financing; and (d) the procedures for receiving benefits are set forth in the Plan document.

[ECF No. 16 at 6]. The Court agrees. As in Gross, "[t]he record demonstrates beyond debate that the 'crucial factor' [the First Circuit] identified in Wickman is satisfied here, i.e., that

9

[Partners] undertook to provide benefits for its employees 'on a regular and long term basis.'" 734 F.3d at 7.  The Court thus finds that the Plan is an "employee benefit plan" governed by ERISA.

### B. Whether Plaintiffs' Claims "Relate To" the Plan

The second step of the ERISA conflict preemption analysis is to determine whether Plaintiffs' claims "relate[] to" the employee benefit plan at issue.  McMahon, 162 F.3d at 36 (citation omitted).  In broad terms, "[a] law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan."  Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97 (1983)).  The Supreme Court has refined this analysis by identifying

> three categories of state laws that "relate to" ERISA plans . . . : (1) state laws that "mandate[ ] employee benefit structures or their administration," (2) state laws that "bind plan administrators to [a] particular choice," and (3) state law causes of action that provide "alternative enforcement mechanisms" to ERISA's enforcement regime.

Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 51 (1st Cir. 2000) (second and third alteration in original) (quoting N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 658–59 (1995)).  Only the third category is relevant here.

"[I]n order to assess whether the state law cause of action is an alternative enforcement mechanism, [courts] must 'look beyond the face of the complaint' and determine the real nature of the claim 'regardless of plaintiff's . . . characterization.'"  Hampers, 202 F.3d at 51 (third alteration in original) (quoting Danca v. Priv. Health Care Sys., Inc., 185 F.3d 1, 5 (1st Cir. 1999)).  The First Circuit has "consistently held that a cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action."  Id. at 52 (citing McMahon, 162 F.3d at 38; Boston Children's Heart Found., Inc. v. Nadal-Ginard, 73 F.3d 429, 440 (1st Cir. 1996); Carlo v. Reed

10

Rolled Thread Die Co., 49 F.3d 790, 793–94 (1st Cir. 1995); Vartanian v. Monsanto Co., 14 F.3d 697, 698–99 (1st Cir. 1994)).  In addition, Hampers held that "ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan." Id. (citing Carlo, 49 F.3d at 794).

Here, Plaintiffs' breach of contract and statutory claims both stem from MetLife's alleged failure to pay Plaintiffs $250,000 under the Decedent's supplemental life insurance coverage, and Plaintiffs seek damages including the "$250,000 insurance claim balance."  [Compl. at 10]. "Claims, like these, by a beneficiary to recover money under the terms of an ERISA plan are prototypical alternative enforcement claims."  Sokhos v. Steward Health Care Sys. LLC, 439 F. Supp. 3d 5, 9 (D. Mass. 2020) (citing 29 U.S.C. § 1132(a)(1)(B) ("ERISA's civil enforcement remedy includes claims brought 'by a . . . beneficiary . . . to recover benefits due to him under the terms of his plan'"); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62–63 (1987) ("[A]s a suit by a beneficiary to recover benefits from a covered plan, it falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes."); Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997) ("It would be difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan."); Summersgill v. E.I. Dupont de Nemours & Co., No. 13-cv-10279, 2014 WL 1032732, at *2–4 (D. Mass. Mar. 18, 2014) ("dismissing breach of contract and 93A claims as preempted by ERISA because resolution would require factfinder to consult the ERISA plan")).  The Court therefore finds that Plaintiffs' claims relate to the Plan and are preempted by ERISA.[3]

---

[3] MetLife also argues that, "[t]o the extent the Court *sua sponte* converts plaintiffs' state law breach of contract claim to a claim under § 502(a)(1)(B) of ERISA, summary judgment still must

11

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment, [ECF No. 15], is GRANTED, without prejudice to Plaintiffs filing an amended complaint to state any causes of action available under ERISA within thirty days of this Order.

**SO ORDERED.**

December 13, 2023                                            /s/ Allison D. Burroughs
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE

---

be granted in favor of MetLife because it reasonably and correctly determined that the Decedent did not have supplemental life insurance coverage under the Plan at the time of her March 2021 death, and, as such, supplemental life insurance benefits were not payable to plaintiffs." [ECF No. 16 at 2]. The Court declines to *sua sponte* convert Plaintiffs' claim to an ERISA claim, see Williams v. HealthAlliance Hosps., Inc., 135 F. Supp. 2d 106, 111 (D. Mass. 2001) ("Mindful that preemption does not necessarily compel dismissal under Fed. R. Civ. P. 12(b)(6), . . . this Court is, nonetheless, not in the business of drafting claims for plaintiffs. Accordingly, the complaint will be dismissed without prejudice to the filing of an amended complaint . . . ." (citing Fitzgerald v. Codex Corp., 882 F.2d 586, 589 (1st Cir. 1989)), and the Court will not now address MetLife's argument on this point.